**VIDEO WAREHOUSE OF HUNTINGTON, INC.,**
**Plaintiff,**

v.

**BOSTON OLD COLONY INSURANCE COMPANY, a corporation,**
**Defendant.**

Civ. A. No. 3:94–0720.

United States District Court,
S.D. West Virginia,
at Huntington.

Dec. 16, 1994.

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, WV, for Video Warehouse of Huntington, Inc.

Barry M. Taylor, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, WV, Maureen C. Middleman, Dibella & Geer, Pittsburgh, PA, for Boston Old Colony Ins. Co.

## ORDER

TAYLOR, United States Magistrate Judge.

On April 21, 1993, a building located at 2203 Third Avenue in Huntington caught fire, resulting in damage to the building as well as "to property of the plaintiff located in [the] ... building." Believing that insurance provided by defendant covered its losses, plaintiff submitted a proof of loss to defendant in the amount of $118,754.39. When it failed to receive a timely response[1] to its proof of loss, plaintiff corresponded with the West Virginia Insurance Commission, informing the Commission that a claim had been filed with its insurer on March 5, 1994, and, when a response was not forthcoming "in the time prescribed under insurance regulations, another certified letter was sent notifying them of their failure to respond." As of the date of its letter to the Insurance Commission, April 7, 1994, plaintiff had received no response "from the company." In response to plaintiff's complaint, Jack Shamblin, a Complaints Examiner with the Office of the Insurance Commissioner, wrote defendant on April 13, 1994,[2] enclosing a copy of plaintiff's letter of complaint and requesting an explanation regarding the matter. Mr. Shamblin informed defendant that "[f]ailure to comply with this request will be in violation of West Virginia regulations and could result in penalties...." In response to this letter, James Pfister, a Vice President of Continental Insurance Company, made inquiry of Dick Thompson, "AVP/Manager–Claims," asking him to "research the complaint and forward a draft of the findings" so that he could "respond to the Bureau of Insurance." Mr. Pfister's inquiry generated, *inter alia*, a memo, with attachments, from Barbara Hammer, a claims manager, to Nate Bereket, "Vice President Claims," which plaintiff sought in a request for production of documents and which was withheld by defendant on grounds that the document and attachments were prepared in anticipation of litigation and entitled to limited immunity from discovery under the provisions of Rule 26(b)(3), Fed.R.Civ.P.[3] Following a hearing on plaintiff's motion to compel production of the memo, it was submitted to the Court for *in camera* review. Having reviewed the documents, the Court concludes that, in the context of the facts of this case, and taking account of governing principles applicable to work-product immunity, the memo and attachments cannot be characterized as prepared in anticipation of litigation in the sense contemplated by the work-product doctrine.

Under Rule 26(b)(3), documents, otherwise discoverable because relevant to the subject matter involved in the pending action, are accorded limited immunity from discovery if "prepared in anticipation of litigation or for trial...." Notes of the Advisory Committee appended to the 1970 amendments to Rule 26 explain, however, that "[m]aterials assembled

---

1. One of the problems arising during the course of proceedings following the fire stems from the fact that the proof of loss may have been submitted to an incorrect address or entity.

2. The letter was sent to Continental Insurance Company, presumably the corporate parent of defendant.

3. Suit was instituted by plaintiff in the Circuit Court of Cabell County on July 29, 1994, and subsequently removed to this Court.

in the ordinary course of business, or pursuant to public requirements unrelated to litigation ... are not under the qualified immunity provided by this subdivision." As recitation of the circumstances giving rise to the creation of the documents at issue would seem to make plain, these documents, in fact, were generated, if not in the ordinary course of business, certainly "pursuant to public requirements unrelated to litigation" inasmuch as, in making its investigation, defendant was acting in response to directions from the Office of the Insurance Commissioner, having been informed that compliance was required by "regulation." Apart from its "public requirements" aspect, it seems equally apparent that the actions of defendant leading to the generation of documents involved only preliminary activities in anticipation of the receipt of a claim of loss from plaintiff, who believed it had experienced a loss covered by a policy of insurance issued by defendant. Nothing, it would appear, could more closely approximate actions taken "in the ordinary course of business." As has been observed, discovery of documents by an insured from its insurer "presents a special problem for application of the work-product rule because it is the very nature of an insurer's business to investigate and evaluate the merits of claims." *Harper v. Auto–Owners Insurance Company*, 138 F.R.D. 655, 662 (S.D.Ind.1991). Moreover, "[m]ost courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and not work-product." *Id.* Although some prospect of litigation may have been considered by those preparing the documents, and such will be assumed for purposes of decision,[4] nevertheless, to qualify for protection under the work-product doctrine, "[t]he document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *National Union Fire Insurance Company v. Murray Sheet Metal Company, Inc.*, 967 F.2d 980, 984 (4th Cir.1992). The documents involved in the present dispute were clearly not prepared "because" of the prospect of litigation, nor was the "driving force behind the preparation of each requested document," *Id.*, in any real sense anticipation of litigation or preparation for trial. The insurer was simply initiating the process, undoubtedly followed in similar cases, of determining whether it had provided coverage for a loss set forth in plaintiff's proof of loss which it anticipated receiving very shortly. Being cognizant of the fact that the burden of proof rests with the party asserting work-product to demonstrate that the materials were prepared in anticipation of litigation, *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir.1992), and concluding that defendant has failed to satisfy this burden, it is, accordingly, ORDERED that the documents submitted for *in camera* review be made available to plaintiff for inspection and copying.

---

4. Nothing in the way of evidence has, however, been tendered or proffered.