**In re AIR CRASH AT CHARLOTTE, NORTH CAROLINA ON JULY 2, 1994.**

**No. MDL 1041.**

United States District Court, D. South Carolina, Columbia Division.

Oct. 26, 1995.

Mark A. Dombroff, Tom Almy, Dombroff and Gilmore, Washington, DC, Edward Wade Mullins, Jr., Richard B. Watson, Nelson, Mullins, Riley & Scarborough, Charleston, SC, for Defendant USAir.

James Wilton Orr, Bowers, Orr & Dougall, Columbia, SC, Lawrence Edward Richter, Jr., Richter Firm, P.A., William Parham Simpson, Haynsworth, Marion, McKay & Guerard, Columbia, SC, Michael L. Baum, Kananack, Murgatroyd, Baum & Hedlund, Los Angeles, CA, Frank H. Granito, Speiser, Krause, Madole & Nolan, New York, NY, Mark Moller, Kreindler & Kreindler, New York, NY, David E. Rapoport, Rapoport & Kupets Law Offices, O'Hare International Center, Rosemont, IL, for Plaintiffs Steering Committee.

Patrick E. Bradley, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Raymond E. Clark, Asst. U.S. Atty., Columbia, SC, for Defendant U.S.

ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is before the court upon plaintiffs' motion to compel production from defendant U.S. Air, Inc. ("U.S.Air"). U.S. Air asserts a variety of privileges regarding the documents in dispute. Oral argument was heard on the request on September 19, 1995. At the conclusion of the argument, the court took the matter under advisement and directed defendant to furnish the court with a privilege log. Additional argument was heard by way of a telephone conference call on October 5, during which the court directed defendants to file all of the disputed documents with the court for its *in camera* re-view. The court then received additional briefing on the various privileges that had been asserted and conducted a final telephone conference call on October 19, 1995. For the reasons which follow, the motion to compel is granted in part and denied in part.

At issue in this motion are sixty-two documents prepared by, or at the request of, defendant U.S. Air. As set out in detail in the privilege log on file with the clerk in this case, U.S. Air contends that all sixty-two documents are protected by one or more of three privileges: the attorney-client privilege, the work-product privilege, and the self-critical evaluation privilege. As to most of the documents, more than one privilege is asserted.

■ Federal Rule of Evidence 501 provides that where an action is governed by federal law, issues of privilege are determined in accordance with federal common law. Where, however, as here, the matter before the court is based upon diversity of citizenship, "the privilege ... shall be determined in accordance with state law." Fed. R.Evid. 501. The parties agree on the relevant law of attorney-client and work-product privilege. With regard to the work-product privilege, however, plaintiffs contend that U.S.Air waived the privilege when it signed a document agreeing to cooperate with National Transportation Safety Board ("NTSB") investigators assigned to investigate the crash in dispute in this litigation. The court has reviewed the text of the waiver executed by U.S. Air in connection with the NTSB investigation and has determined that it does not waive the work-product privilege asserted in this case, at least as to the documents in dispute.

As noted above, both parties agree on the substantive law of attorney-client and work-product privilege. Thus, for the documents for which one or both of these privileges is asserted, the court's task has been limited to a review of the documents to determine if they fall within the protection of either privilege. After its initial review of the documents, the court determined that it had sufficient information to determine the applicability of these two privileges as to all documents except for documents sixty-one

and sixty-two. It appeared, upon this court's cursory review of the documents, that they contained little more than data-compilations, charts, and graphs. At the final conference call on October 19, 1995, counsel for U.S. Air assured the court that these compilations were calculations made at the request of counsel, in preparation for litigation. Counsel further assured the court that plaintiffs have been provided with the raw data upon which the calculations were made.

After receiving this information, the court now concludes that all documents except for documents 3, 4, 5, 20, 21, and 28 are protected by either the attorney-client or work-product privilege, or both. Accordingly, the court will deny the request for production with respect to these documents. The court will require these documents to remain filed with the clerk, under seal, so they will be available to the Court of Appeals in the event of an appeal after trial in this case.

The remaining documents (Numbers 3, 4, 5, 20, 21, and 28) are more problematic. As to these documents, U.S. Air asserts only the so-called self-critical evaluation privilege. In marked contrast to the position of the parties with regard to the substantive law of the other two privileges, U.S. Air and plaintiffs take widely-divergent positions on the question of which state law should govern the privilege issue and, secondarily, whether any jurisdiction whose laws potentially apply to this litigation recognizes the self-critical evaluation privilege.

U.S. Air contends that the law of South Carolina, the forum state for all cases that have originated in South Carolina or have been transferred here for consolidated pretrial proceedings by the multidistrict litigation panel, should govern the privilege issue. Plaintiffs contend, on the other hand, that because this court will be required to apply the law of the state of North Carolina (the place where the plane crash in question occurred) the court should look to the law of North Carolina to determine whether a self-critical evaluation privilege should be recognized and applied to the six documents in dispute.

The court, however, finds it unnecessary to decide the troublesome issue of which state's law should apply, or, alternatively, to what extent the law of either North Carolina or South Carolina would recognize the self-critical evaluation privilege. The court's review of the documents for which this privilege is asserted yields the conclusion that even if the relevant state recognized the self-critical evaluation privilege such a privilege would not apply under the circumstances presented here.

■ As pointed out by plaintiffs in their memorandum of law, the self-critical evaluation privilege is a privilege of recent origin and one that is narrowly applied even in those jurisdictions where it is recognized. As noted by the Ninth Circuit Court of Appeals: "The Supreme Court and the circuit courts have neither definitely denied the existence of such a privilege, nor accepted it and defined its scope. Rather, when confronted with a claim of the privilege, they have refused on narrow grounds to apply it to the facts before them...." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 427 n. 1 (9th Cir.1992). The *Dowling* court explained:

> [O]ther courts have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least three criteria: 'first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed.' Note, The Privilege of Self-Critical Analysis, 96 Harv.L.Rev. 1083, 1086 (1983). To these requirements should be added the general proviso that no document will be accorded a privilege unless it was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. *See* James F. Flanagan, Rejecting a General Privilege for Self-Critical Analyses, Geo. Wash.L.Rev. 551, 574–576 (1983)....

*Id.* at 425–426.

In *Dowling* the court refused to apply the privilege to protect voluntary routine pre-

accident safety reviews undertaken by a cruise ship operator which may have disclosed that the defendant had knowledge of the dangers which resulted in an injury to the plaintiff in a Jones Act case. The court found that such reviews will rarely, if ever, be curtailed simply because they may be the subject of discovery. The court held that such reviews are not always performed with the expectation that they will be kept confidential. Rather, the discovery sought was of signal importance:

> [T]hat information may reveal not only what the company knew of the condition, but whether it regarded it as dangerous, whether it assigned someone to repair the condition, what that person did, whether the company typically responded swiftly and effectively to hazardous conditions or allowed them to persist, and so on.... A rule that manufacturers' reviews of the safety of their products are privileged from discovery would place a nearly insurmountable barrier in front of plaintiffs who must prove malice in order to obtain punitive damages in product liability actions.... It would also create an enormous obstacle to claims that a manufacturer fraudulently concealed its knowledge of the health hazards of its products.

971 F.2d at 427.

■ Where recognized, the self-critical evaluation privilege does not shield objective facts from discovery. *See, e.g., Reichhold Chemicals, Inc. v. Textron, Inc.,* 157 F.R.D. 522, 526 (N.D.Fla.1994); *Webb v. Westinghouse Elec. Co.,* 81 F.R.D. 431, 434 (E.D.Pa. 1981). The self-critical evaluation privilege has been rejected where the information is sought by a governmental agency. *E.g., F.T.C. v. TRW, Inc.,* 628 F.2d 207, 208 (D.C.Cir.1980). Furthermore, information otherwise subject to the privilege "must be disclosed whenever it is material to the adversary's case, and where the information therein cannot be obtained through alternative sources." Federal Rules of Evidence Manual, Vol. 2, p. 637 (6th ed.1994).

■ Applying the foregoing principles to the six documents for which U.S. Air seeks to assert this privilege, the court has concluded that the documents in dispute do not meet the requirements of the privilege. The most significant stumbling block for U.S. Air is the third factor identified by the court in *Dowling, supra:* the proponent of the privilege must demonstrate that the information is of the type whose flow would be curtailed if discovery were allowed.

It is beyond dispute that the airline industry is highly competitive and tightly regulated. Moreover, all airlines have a keen interest in advancing and promoting safety as well as improving service. Airlines are, therefore, likely to conduct internal audits from time to time to insure improved efficiency (both in terms of service and economy), safety and marketability. While disclosure of these audits and other papers to competitors of U.S. Air would certainly deter use of them in the future, disclosure for limited use in litigation (such as to prove notice) is unlikely to deter their use.

In addition to these broad reasons for not applying the self-critical evaluation privilege to the six documents in dispute, other more specialized reasons exist. For example, with regard to the select review panel report (Document # 3) certain "acknowledgements" within the documents suggest that much of this information, if not the entire report, may have been gleaned from or shared with outsiders. Moreover, the "tone" of this document seems to be more oriented towards public relations than a candid self-critical analysis. For these reasons, disclosure of the documents in discovery, subject to a strict protective order, is unlikely to deter preparation of a similar document in the future.

With regard to the documents relating to the Phaneuf audit (Documents 4, 5, 20, & 21) it appears that the report itself was made in anticipation of a national aviation safety inspection by the Federal Aviation Administration (FAA). Given its purpose of helping the airline comply with FAA regulations, limited disclosure of the report, and documents relating to it, is unlikely to deter preparation of similar reports in the future. With regard to the U.S. Air internal white glove audit (Document # 28) certain passages in the document itself indicate that U.S. Air discussed turning the audit over to the FAA.

For all of the foregoing reasons, the court has concluded that Documents 3, 4, 5, 20, 21, & 28 would not be protected by a self-critical evaluation privilege even if one were recognized by the appropriate jurisdiction. Therefore, assuming, without deciding, that such a privilege should apply in this case, the court determines that the six documents listed in this paragraph are not protected by the privilege.

■ Defendant also has pending two motions for protective order relating to the deposition of Captain Timothy Ludwig. The first motion, filed October 16, 1995, seeks to protect from disclosure a conversation between Ludwig and another witness which occurred in counsel's offices during a break in deposition preparation. Counsel was not, however, a party to the conversation. The court finds that attorney-client privilege cannot be asserted under these circumstances. Plaintiff's witnesses must respond to these questions. The second or "supplemental" motion, filed October 25, 1995 addresses this conversation as well as various communications with counsel. The latter do appear to be protected by the attorney-client privilege and need not be disclosed.

This ruling shall be binding in future depositions of other witnesses as to the specific conversations and events covered in defendant's memorandum and by this order. Therefore, no new Local Rule 10.04(C) motion need be made after directing a witness not to answer such inquiries to the extent the asserted privilege is covered by this order.

### CONCLUSION

For the foregoing reasons, U.S. Air shall produce Documents 3, 4, 5, 20, 21, & 28 to plaintiffs within ten (10) days from the date of this order. The remaining documents are all protected by either the attorney-client or the work-product privilege and need not be produced. Captain Ludwig shall respond to the inquiries related to his conversation with another witness outside counsel's presence.

IT IS SO ORDERED.