Patricia KIDWILER, Plaintiff,

v.

PROGRESSIVE PALOVERDE INSURANCE CO., a foreign corporation, Defendants.

No. CIV A 3:99CV26.

United States District Court, N.D. West Virginia, Martinsburg.

April 12, 2000.

538

Robert P. Fitzsimmons, Fitzsimmons Law Offices, Wheeling, WV, Michael W. McGuane, Haranzo & McGuane, Wheeling, WV, for plaintiff.

Robert A. Lockhart, Spilman, Thomas & Battle, Charleston, WV, Gray Silver, III, Spilman, Thomas & Battle, Martinsburg, WV, Donald L. Miller, II, Robert L. Steinmetz, Brown, Todd & Heyburn, PLLC, Louisville, KY, for defendant.

### MEMORANDUM OPINION AND ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER

BROADWATER, District Judge.

Defendant filed an objection to the Magistrate Judge's Order entitled "Objection To Proposed Findings And Recommendations By Magistrate Judge That Documents Reviewed *In Camera* Are Discoverable and Granting In Part Plaintiff's Motion To Compel Discovery."[1] The Court **ORDERS** that the objection is **DENIED**. Accordingly, the Court **AFFIRMS** the Magistrate Judge's Order.[2]

### I. PROCEDURAL HISTORY [3]

1. Plaintiff filed a motion to compel.[4]

2. The Court referred the motion to Magistrate Judge Seibert for disposition.[5]

3. Magistrate Judge Seibert granted, in part, the motion to compel and Ordered that

---

1. Doc. # 40.

2. Doc. # 33.

Because Doc. # 33 is an Order by the Magistrate Judge amending a typographical error to Doc. # 32, the Court considers Doc. # 33 in lieu of Doc. # 32.

3. The relevant facts and procedural history are set forth in greater detail in this Court's prior Order. Doc. # 66.

4. Doc. # 22.

5. Doc. # 24.

documents be submitted for an *in camera* review.[6]

4. Upon an *in camera* review of the documents, Magistrate Judge Seibert granted, in part, the motion to compel.[7]

5. Defendant filed an objection to this Order.[8]

6. Plaintiff filed a response to defendant's objection.[9]

## II. ISSUES

1. Whether the attorney-client privilege protects the insured's, Tina Canter, statements from disclosure.

2. Whether the work product privilege attaches to documents defendant created after July 6, 1998, and, therefore, are not discoverable by plaintiff.

## III. DISCUSSION OF LAW AND ANALYSIS

1. *The attorney-client privilege does not protect the insured's, Tina Canter, statements from disclosure.*

### A. The Documents at Issue

Document numbers 276–87 are at issue. These documents are a transcription of Tina Canter's telephonic interview concerning the automobile accident. Eric McConnell, an employee of Progressive, conducted this telephonic interview on November 11, 1997.

McConnell is not identified as a lawyer. As well, this telephonic interview was conducted within a month after Tina Canter's collision with Kidwiler on October 27, 1997.[10]

Magistrate Judge Seibert concluded that these documents were not protected by the attorney-client privilege.[11] In addition, Magistrate Judge Seibert held that because these documents were generated as part of a routine investigation of plaintiff's claim, these documents were not created under the anticipation of litigation.[12] Therefore, Magistrate Judge Seibert concluded that these documents were not protected by the work product rule.[13]

### B. Defendant's Argument

Defendant argues that, under *State ex rel. Allstate Ins. Co. v. Gaughan*,[14] these documents are protected by the attorney-client privilege. Therefore, defendant concludes that these documents are protected from plaintiff's discovery requests.[15]

### C. Discussion of Law

The Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1332.[16] Therefore, West Virginia state law, addressing the attorney-client privilege, applies in this case.[17]

■ In West Virginia,

> Defendant argues that the Magistrate Judge erred in concluding that Canter's statements are discoverable because they were not protected by the work product doctrine. *Id.* ("Progressive objects to the proposed findings and recommendations of the Magistrate Judge that the recorded statement of its insured ... is a document generated as a routine business practice and is discoverable").

6. Doc. # 29.

7. Doc. # 33.

8. Doc. # 40.

9. Doc. # 43.

10. Doc. # 1, ¶¶ 4, 5.

11. Doc. # 33. ("It is not protected by attorney-client privilege[]").

12. *See infra* notes 37–42.

13. Doc. # 33. ("It is not protected by ... work product.").

14. 203 W.Va. 358, 508 S.E.2d 75 (1998).

15. Doc. # 40 ("As an insured of Progressive, Ms. Canter's statement is subject to the attorney-client privilege").

16. Doc. # 1, ¶¶ 1, 2,; Doc. # 4, ¶¶ 1–3.

17. Fed R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law."); *In re Air Crash at Charlotte, North Carolina on July 2*, 982 F.Supp. 1052, 1053 (D.S.C.1995) ("[W]here an action is governed by federal law, issues of privilege are determined in accordance with federal common law. Where, however, ... the matter before the court is based upon diversity of citizenship, 'the privilege ... shall be deter-

[i]n order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.[18]

This is a third-party bad faith action; an action by plaintiff against the insured's, Tina Canter, insurance company, for alleged bad faith in settling the plaintiff's claim against the insured.[19]

In *State ex rel. Allstate Ins. Co. v. Gaughan*,[20] the West Virginia Supreme Court of Appeals addressed the attorney-client privilege in the context of third-party bad faith insurance cases. However, the Court limited its holding to apply to situations only where the insured has executed a release of the claim file for the third-party.[21] The Court held that in this context, where the insured has executed a release, the insurer "should be permitted a 'quasi attorney-client privilege' with respect to the claim file of an insured in a third-party bad faith action."[22]

Contrary to defendant's argument, the Court's holding in *Gaughan* is not specifically on point. In this case, both counsel for the plaintiff and defendant have not addressed whether Tina Canter executed a release of her claims file to the plaintiff. A review of the file indicates that Tina Canter did not execute a release of her claims file to the plaintiff.

Even though the Court's holding in *Gaughan* is not specifically on point, its analysis provides a framework to decide the comparable issues faced in this case. The quasi attorney-client privilege would not protect the transcription of the interview from disclosure even if Tina Canter executed a release. The West Virginia Supreme Court of Appeals categorically held "that all communications in an insured's claim file that were generated prior to the filing date of a third-party's underlying complaint against the insured are not protected by the quasi attorney-client privilege."[23]

■ In this case, plaintiff filed her complaint on March 24, 1999.[24] Eric McConnell conducted the interview on November 20, 1997. Therefore, the interview was conducted prior to the filing of plaintiff's complaint. Consequently, the quasi attorney-client privilege does not protect the transcription of the interview from disclosure.

■ Additionally, the traditional attorney-client privilege does not protect this document from disclosure. Tina Canter's statements were not made to an attorney.[25]

Therefore, the attorney-client privilege does not protect the insured's, Tina Canter, statements from disclosure.

However, there still remains the issue of whether the documents may be subject to the work product privilege.

---

mined in accordance with state law.'") (citing FED R.EVID. 501).

18. *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129, 135 (1979).

19. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor. In the bad faith action against the insurance company the third-party alleges the insurer insurance company engaged in bad faith settlement in the first action against the insured tortfeasor.

*State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75, 86–87 (1998).

20. *Id.*

21. *Id.*, 508 S.E.2d at 89 n. 22 ("This opinion does not address the issue of a third-party seeking the claim file of an insured who has not executed such a release [of the claim file to a third-party suing an insurer in a bad faith action].").

22. *Id.* at 89. The Court further stated that "[w]e therefore hold that in a third-party bad faith action where an insured has signed a release of his/her claim file to a third-party litigant, an insurer may raise a quasi attorney-client privilege to communications in the insured's claim file." *Id.*

23. *Id.* at 90.

24. Doc. # 1.

25. *See supra* note 18.

2. *Although the work product privilege may attach to documents defendant created after July 6, 1998, the Magistrate properly determined that the work product doctrine did not apply to specific documents created after July 6, 1998.*

### A. *Defendant's Argument*

Defendant argues that the work product privilege attached to documents created after July 6, 1998 because "after receiving the July 6, 1998, correspondence, Progressive was in possession of Plaintiff's 'specific and articulable' bad faith allegations, and subsequently, had a 'strong anticipation of litigation.'"[26]

### B. *Discussion of Law*

Under the Federal Rules of Civil Procedure, information that is relevant, and not privileged, is subject to discovery.[27]

■ The Supreme Court addressed the work product doctrine in *Hickman v. Taylor*.[28] The Supreme Court stated that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."[29] The Federal Rules of Civil Procedure codified the work product doctrine.[30] Importantly, courts narrowly construe the work product doctrine consistent with its purpose of protecting the attorneys' work in representing a client.[31] The application of the work product doctrine is particularly difficult in the context of insurance claims.[32]

---

**26.** Doc. # 40.

Defendant has three other arguments. However, these arguments all focus on whether the work product doctrine applies to documents created after July 6, 1998. First, defendant argues that Magistrate Judge Seibert misinterpreted *Westhemeco Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702 (S.D.N.Y.1979), and that even under *Westhemeco Ltd.*, as interpreted by the Magistrate Judge, the work product privilege attached to the documents.

Second, defendant argues that Magistrate Judge incorrectly relied upon *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115 (N.D.Ga.1972). According to defendants, Magistrate Judge Seibert misinterpreted *Atlanta Coca–Cola Bottling Co.* to stand for the proposition that "all claim evaluations by an insurance company are 'routine business practice,' and therefore, work product protection can never attach.'" Doc. # 40. Furthermore, defendant's argue that, in any case, *Atlanta Coca–Cola Bottling Co.* is inapplicable because that case addressed "routine" insurance claims and that, in this case, the July 6, 1998, placed defendant's on notice of a "non-routine" insurance claim: a bad faith lawsuit.

Moreover, while *Atlanta Coca–Cola* generally addresses the "routine" insurance claim, it does not address claims where an event has occurred making litigation on the claim probable. Indeed, there is nothing "routine" about the Plaintiff's claim in this case, when, by correspondence dated July 6, 1998, Plaintiff's lawyer put Progressive on notice that he would pursue this "bad faith" lawsuit.

Doc. # 40 (citations omitted).

Third, defendant argues that Magistrate Judge Seibert incorrectly relied upon *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573 (9th Cir.1992), because that case was decided by the Ninth Circuit and not the Fourth Circuit. Doc. # 40 ("*Holmgren* is an opinion of the Ninth Cir-

cuit Court of Appeals that is not an accurate statement of law in this judicial circuit.").

**27.** See Fed R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action").

**28.** 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.

**29.** *Id.* at 510, 67 S.Ct. 385.

**30.** See Fed.R.Civ.P. 26(b)(3); *see also Doe v. United States*, 662 F.2d 1073, 1078 (4th Cir.1981) ("The rule and rationale of *Hickman* have been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.").

**31.** See *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C.1993) ("Because work product protection by its nature may hinder an investigation into the true facts, it should be narrowly construed consistent with its purpose. The purpose behind work product protection is to safeguard the lawyer's work in developing his client's case.") (citations omitted).

**32.** See *Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.*, 160 F.R.D. 83, 85 (S.D.W.Va.1994) ("As has been observed, discovery of documents by an insured from its insurer 'presents a special problem for application of the work-product rule because it is the very nature of an insurer's business to investigate and evaluate the merits of claims.'") (citing *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 662 (S.D.Ind. 1991)). This is particularly true because "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim." *State Farm Fire and Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D.Va.1984); *see also Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Because an insurance company has a

The party asserting the work product privilege bears the burden [33] of showing "(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent." [34]

A document is prepared in the anticipation of litigation if "the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." [35] Therefore, the document must be prepared under the "substantial and imminent" or "fairly foreseeable" threat of litigation. [36]

In contrast, a document created in the ordinary course of business is not created under the anticipation of litigation and, therefore, is not protected by the work product doctrine. [37]

There is no hard and fast rule to determine the point in time when a document is created under the ordinary course of business, and therefore not protected by the work product doctrine, or under the anticipation of litigation, and therefore, protected by the work product doctrine. [38] Therefore, the Court adopts a "case-by-case" approach to this issue, [39] and considers the following factors relevant in this analysis: "the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case" [40] and, in addition, the involvement of counsel. [41] Furthermore, the Court considers persuasive, in this analysis, the time when the document is created. [42]

At issue, in this case, is whether the documents were prepared under the anticipation of litigation.

### C. Analysis and Conclusion

On July 6, 1998, plaintiff, though her attorney, wrote a letter to defendant advising that defendant violated West Virginia law. [43]

duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection.").

33. See Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 355 (4th Cir.1992) ("The burden of proof rests with ... the party asserting the work product doctrine").

Importantly, the party asserting the work product privilege must "come forward with a specific demonstration of facts supporting the requested protection." Suggs, 152 F.R.D. at 505. Therefore, "[t]he proponent cannot shift its burden to the Court by expecting the Court to review each document of a thick file." Pete Rinaldi's Fast Foods, Inc., 123 F.R.D. at 203.

34. Suggs, 152 F.R.D. at 505.

35. National Union Fire Ins. Co. of Pittsburgh, PA. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir.1992).

36. See State Farm Fire and Cas. Co. v. Perrigan, 102 F.R.D. 235, 238–39 (W.D.Va.1984).

37. See Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252, 257 (W.D.Va.1999) ("[T]he work-product doctrine does not protect from production those documents ... created or gathered in the ordinary course of investigating this claim").

38. See State Farm Fire and Cas. Co., 102 F.R.D. at 237 ("[A]t some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs.").

39. Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988).

40. Id. at 201.

41. Id. ("Involvement of an attorney is a highly relevant but not necessarily controlling factor.") (citing Fine v. Bellefonte Underwriters Ins. Co., 91 F.R.D. 420 (S.D.N.Y.1981)).

42. Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation. This is not to say that the threat of litigation may never arise at an earlier time. However, if the insurer argues it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate

Id. (citations and footnotes omitted).

43. Moreover, you violated West Virginia law in regards to not conducting a reasonable investigation as to whether or not liability rests with your

Therefore, defendant correctly notes that on July 6, 1998, defendant had an anticipation of litigation.[44]

However, defendant incorrectly concludes that therefore, all documents created after July 6, 1998 are protected by the work product doctrine.[45] On the contrary, defendant fails to note that the nature of the specific document is relevant to determine whether the document is created under the anticipation of litigation.[46]

Specifically, the Magistrate Judge reviewed each document, created after July 6, 1998, *in camera,* and determined whether the document was created under the threat of litigation or in the ordinary course of business.[47] The Magistrate Judge's analysis is consistent with the "case-by-case" approach to determine whether a document is created under the anticipation of litigation.[48] Consequently, the Magistrate Judge's Order is not contrary to the law.[49]

Therefore, although defendant had an anticipation of litigation after July 6, 1998, the Magistrate Judge properly determined that the work product doctrine did not apply to specific documents created after July 6, 1998.

### IV. CONCLUSION

| 1. *Documents* | *234–56* |
| *Magistrate Judge's Order* | *Granted* |
| *Decision* | *Affirmed* |

client. It clearly rests with your client in this situation because the facts of the case are so clear they do not need to be reiterated here. Doc. # 40, Exh. D.

44. *See supra* note 26.

45. *See supra* note 26.

46. *See supra* note 40.

47. Doc. # 33; *see also supra* notes 37–42.

48. *See supra* note 39.

49. A motion to compel is a nondispositive motion. *See Clark v. Milam,* 847 F.Supp. 424, 425 (S.D.W.Va.1994) ("Courts have consistently found routine discovery motions to be 'nondispositive' within the meaning of Rule 72(a).") (citations omitted). Therefore, the Court reviews the Magistrate's Order under the deferential, *see id.* ("The standard of review of a Magistrate Judge's order, pursuant to objections made under Rule 72(a) of the Federal Rules of Civil Procedure, is typically deferential"), "clearly er-

These documents are memos to the file, prepared by defendant's claims specialist, concerning the accident and resulting injuries.

Magistrate Judge Seibert properly determined that these documents were not subject to the attorney-client privilege.[50] None of the elements of the attorney-client privilege are at issue with these documents.[51]

Furthermore, Magistrate Judge Seibert determined properly that these documents were not subject to the work product doctrine because they were notes "taken as a routine business practice."[52] A document created in the ordinary course of business is not created under the anticipation of litigation and, therefore, is not protected by the work product doctrine.[53]

| 2. *Documents* | *257–63* |
| *Magistrate Judge's Order* | *Granted* |
| *Decision* | *Affirmed* |

These documents are entitled "Bi Evaluation Summary".

The Northern District of Georgia held that "the evaluation of its policyholders is the regular, ordinary and principal business of defendant insurance company."[54]

Accordingly, the Magistrate Judge properly determined that these documents are entitled to the work product privilege.[55]

roneous or contrary to law" standard of review. 28 U.S.C. § 636(b)(1)(A) (1993); FED.R.CIV.P. 72(a); *see also Lamonds v. General Motors Corp.,* 180 F.R.D. 302, 304 (W.D.Va.1998) (applying the "'clearly erroneous or contrary to law' standard" in reviewing the magistrate judge's ruling on a motion to compel).

50. Doc. # 33 ("These are not privileged communications between privileged persons for the purpose of seeking legal advise.").

51. *See supra* note 18.

52. Doc. # 33.

53. *See supra* notes 35–42 and accompanying text.

54. *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 118 (N.D.Ga. 1972).

55. *See supra* notes 35–42 and accompanying text.

3. *Document*          *264*
   *Magistrate Judge's Order*    *Denied*

This document is a facsimile sheet from Natalie Whitaker to Kathy Sundberg about legal advice concerning this claim. The Magistrate Judge determined that this document was protected by the attorney-client privilege.[56] The plaintiff did not object to this ruling. Therefore, the Magistrate Judge's decision stands.

4. *Documents*          *265–75*
   *Magistrate Judge's Order*    *Granted*
   *Decision*                *Affirmed*

■ This is a faxed letter from counsel for plaintiff to defendant's claims specialist confirming a telephone conversation. This letter also included a release and copies of regulations and statutes.

Magistrate Judge Seibert determined that these documents were not protected by the attorney-client privilege because the documents were "not between privileged persons and [did] not seek legal advi[c]e." [57] Therefore, the Magistrate properly granted the motion to compel.[58]

5. *Documents*          *276–87*
   *Magistrate Judge's Order*    *Denied*
   *Decision*                *Affirmed*

■ These documents are a transcription of Tina Canter's interview concerning the automobile accident.

Magistrate Judge Seibert properly determined this transcription is not protected by the attorney-client privilege [59] because none of the elements of the attorney-client privilege are at issue.[60]

Furthermore, Magistrate Judge Seibert determined properly that because it is a routine business practice for insurance companies to conduct such interviews, the work product rule does not protect this transcrip-tion.[61] A document created in the ordinary course of business is not created under the anticipation of litigation and, therefore, is not protected by the work product doctrine.[62]

Therefore, the Court **ORDERS** that:

1. The Magistrate Judge's Order[63] is **AFFIRMED**;

2. The defendant's objection[64] is **DENIED**.

3. The Court's previous Order[65] granting the motion that documents remain under seal[66] be **VOIDED** as to all documents, with the exception of the document numbered 264, which the Court concludes is protected by the attorney-client privilege.[67]

The Clerk is directed to transmit a true of copy of this Order to counsel of record herein.

---

**56.** *See supra* note 18.

**57.** Doc. # 33.

**58.** *See supra* note 18.

**59.** Doc. # 33 ("It is not protected by attorney-client privilege[ ]").

**60.** *See supra* note 18.

**61.** Doc. # 33 ("Furthermore, it is a routine business practice to conduct such an interview.").

