**WESTFIELD INSURANCE COMPANY, Plaintiff,**

v.

**CARPENTER RECLAMATION, INC., Defendant.**

**Civil Action No. 5:13–12818.**

United States District Court, S.D. West Virginia, Beckley Division.

Signed July 11, 2014.

Brent K. Kesner, Tanya M. Kesner, Kesner & Kesner, Charleston, WV, for Plaintiff.

Carl James Roncaglione, Jr., The Law Office of Carl J. Roncaglione, Jr., Charleston, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

R. CLARKE VANDERVORT, United States Magistrate Judge.

Defendant Carpenter Reclamation, Inc. [Carpenter], has filed a Motion to Compel Full, Complete, and Meaningful Discovery Responses by Westfield Insurance Company [Westfield], and in the Alternative to Strike, and *in Limine* to Exclude Evidence. (Document No. 52.) Westfield has filed a Response (Document No. 58.), and Carpenter has filed a Reply (Document No. 62.). The undersigned has examined certain documents which Carpenter claims Westfield identified improperly as "work product notes" in its Objection and Privilege Log.[1] Having given full consideration to the positions of the parties and applicable law, the undersigned has determined that Carpenter's Motion to Compel should be granted in part and denied in part and its requests in the alternative to strike Westfield's pleadings, *in limine* to exclude evidence and for expenses including attorneys fees should be denied.

---

1. The Court does not regard Westfield's "work product notes" work product and therefore exempt from disclosure just because Westfield calls them that. The Court will therefore refer to the "work product notes" simply as notes from time to time hereafter.

## THE PLEADINGS

On May 31, 2013, Westfield Insurance Company [Westfield] filed its Complaint for Declaratory Relief naming Carpenter Reclamation, Inc. [Carpenter], and the Board of Education of Greenbrier County [the Board] as Defendants. (Document No. 1.) Allegedly, in February, 2010, Carpenter entered into a contract with the Board to perform site preparation work for the construction of Lewisburg Elementary School. (*Id.*, ¶¶ 2 and 5.) Under the contract, Carpenter was required to prepare space for the construction of the school at a certain specified elevation and allegedly went deeper requiring other contractors to provide services and materials in addition to those anticipated initially to accommodate Carpenter's non-conforming work. (*Id.*, ¶¶ 8–11 and 13.) Westfield alleges that Carpenter was covered under a Commercial General Liability policy of insurance including Commercial Umbrella Coverage with Westfield between December 1, 2010, and December 1, 2011. (*Id.*, ¶¶ 2, 28 and 44.) In February, 2013, the Board initiated a lawsuit in the Circuit Court of Greenbrier County against Carpenter and the other contractors asserting Carpenter's breach of contract. (*Id.*, ¶¶ 1 and 36.) Westfield claims and seeks the District Court's declaration that its policies of insurance do not cover Carpenter for the losses which the Board claimed and Westfield had no duty to defend Carpenter in the lawsuit initiated by the Board.

On June 19, 2013, Carpenter filed its Answer to Westfield's Complaint and Counterclaim for Money Damages and Declaratory Relief. (Document No. 12.) Carpenter admits it was insured under Westfield's Commercial General Liability policy (*Id.*, p. 8, ¶ 28.) but denies Westfield's allegations that the policy does not provide coverage and Westfield is entitled to the declaratory relief which it requests. By its Counterclaim, Carpenter alleges that Westfield's policy of insurance covered the circumstances alleged by the Board in its Complaint, Westfield improperly denied coverage to Carpenter (*Id.*, p. 16, ¶¶ 9 and 10.) and Westfield's failure to provide coverage and a defense constituted the breach of its contract of insurance (*Id.*, p. 27, ¶¶ 17–22.); breach of the implied covenant of good faith and fair dealing (*Id.*, pp. 27–28, ¶¶ 24–25.); breach of fiduciary duty (*Id.*, p. 28, ¶¶ 28–30.); bad faith (*Id.*, pp. 28–29, ¶¶ 34–40.); and entitlement to punitive damages (*Id.*, pp. 29–30, ¶¶ 42–45.).

On July 9, 2013, Westfield filed its Answer to Carpenter's Counterclaim denying Carpenter's allegations. (Document No. 14.)

## CARPENTER'S MOTION TO COMPEL AND WESTFIELD'S RESPONSE

On October 15, 2013, Carpenter filed its Motion to Compel Full, Complete, and Meaningful Discovery Responses by Westfield Insurance Company [Westfield], and in the Alternative to Strike, and *in Limine* to Exclude Evidence. (Document No. 52.) Carpenter states that it served its First Set of Interrogatories, Request for Production of Documents and First Request for Admissions upon Westfield in July, 2013. Carpenter states that Westfield served its Answers to Carpenter's First Request for Admissions on September 13 and its Answers to Carpenter's First Set of Interrogatories and Request for Production of Documents on September 19, 2013. *Id.*, p. 2. Finding Westfield's Answers to certain Interrogatories and Request for Production "incomplete, evasive and not meaningful", Carpenter's counsel sent Westfield's counsel a Rule 37 Notice and Certification on October 14, 2013. *Id.*, pp. 2–3. Most of the Rule 37 Notice and Certification is reproduced in Carpenter's Motion to Compel (Document No. 52 at pp. 3–4.) and a copy is included as Exhibit 3 (*Id.* at 52–3.). It appears from this document that Carpenter's counsel protested Westfield's inclusion of certain writings and communications of Ms. McConkey (Bates Pages 987–988 identified as "work product note 44"), who Carpenter identifies as "Westfield's claims adjuster ... not known to be an attorney at law", in its Objection and Privilege Log as privileged under the attorney-client privilege and/or work product doctrine. (*Id.*, pp. 4–5.) Carpenter asserts that Ms. McConkey's "writings and communications in 2011 are not subject to the attorney-client privilege, nor the work product doctrine, and must be produced." (*Id.*) Carpenter further asserts

that Westfield failed to state who authored certain writings dated from February 21, 2013, through July 11, 2013 (Bates Pages 992–1006), identified in Westfield's Objection and Privilege Log as containing post suit mental impressions of Westfield's representatives and mental impressions of Westfield's representatives and communications with counsel subject to the attorney-client privilege and/or the work product doctrine. (*Id.*, p. 5.) Carpenter states that as of October 15, 2013, when Carpenter filed the instant Motion to Compel and the day after it sent Westfield's counsel the Rule 37 Notice and Certification, "there has been no acceptable response to counsel's October 14, 2013, Rule 37 Notice and Certification. Instead, ... Westfield refused to provide full, complete and meaningful discovery responses which are now late." (*Id.*) Carpenter urges that Westfield's responses to its discovery requests violate Federal Rule of Civil Procedure 26(b), are evasive and intended "to negate the obvious dispositive effect of Carpenter's legitimate discovery efforts" and thus Westfield has abused the discovery process. (*Id.*, p. 6.) Carpenter asserts that by committing discovery abuses, Westfield is intentionally interfering with Carpenter's ability to access the facts underlying Westfield's claims and its defenses in this matter, to present its case on the merits, and to file dispositive motions, and is making this matter more expensive for Carpenter. (*Id.*, pp. 6–9.) Alternatively, Carpenter requests that the District Court strike Westfield's responsive pleadings and grant its Motion *in Limine* excluding Westfield's evidence, arguments and exhibits in their support if Westfield refuses or fails to produce full, complete and meaningful discovery responses. Carpenter further requests an award of attorneys fees and costs incurred in moving to compel. (*Id.*, p. 10.) Carpenter submitted a copy of a Certificate of Service indicating that Carpenter served its first set of discovery requests upon Westfield on July 23, 2013, and including Westfield's Answers to its First Set of Requests for Admissions (Document No. 52–1.); Westfield's Answers to its First Set of Interrogatories and Requests for Production of Documents including Westfield's Objection and Privilege Log (Document No. 52–2.); Carpenter's Rule 37 Notice and Certification (Document No. 52–3.); and a Summary List of Westfield's Inadequate Responses to Carpenter's Interrogatories and Requests for Production of Documents which accompanied the Rule 37 Notice and Certification. (Document No. 52–4.)

Westfield filed its Response on October 29, 2013. (Document No. 58.) Westfield states that Carpenter emailed its Rule 37 Notice and Certification to Westfield late in the day on October 14, 2013, and then served its Motion to Compel upon Westfield the very next morning. Westfield asserts first that Carpenter violated the Rule 37(a)(1) requirement of "certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." (*Id.*, pp. 2–4.)[2] Next, Westfield contends that its responses to Carpenter's Interrogatories 5, 6, 8, 10 and 17 were sufficient. In responding to Interrogatories 5 and 8[3], Westfield states that it

---

2. Additionally, citing Rule 26(d) requiring that parties not commence discovery until they have conferred as required by Rule 26(f), Westfield states that Carpenter served its first round of discovery requests prematurely in July, 2013, when the Court required the parties to hold their Rule 26(f) meeting and submit their Rule 26(f) Report in August, 2013. When Carpenter would not withdraw its discovery, Westfield filed a Motion for Protective Order. The parties stipulated that Carpenter's discovery would be deemed served on the date when the Rule 26(f) meeting was scheduled.

3. Carpenter's Interrogatories 5 and 8 and Westfield's Answers are as follows:

5. Indicate the dates of all communications between the Plaintiffs and/or their representative(s) and Defendant Board of Education, and any agent, design professional agent, and/or servant, and representative thereof, regarding any claims of the Board of Education of Greenbrier County regarding the Lewisburg Elementary School against Carpenter Reclamation, Inc., ("Carpenter"). With regard to each such communication, identify the nature of the communication, the employee(s) of the Plaintiff involved, the individuals with whom they communicated, and the substance of the communication.

Answer: See the work products notes contained in the claim file, attached as Exhibit A, at Bates 979–998, and the Objection and Privilege Log, which identify the communications con-

opted in conformity with Rule 33(d) to produce and identify business records containing the requested information. (*Id.*, p. 5.) Westfield then discussed Carpenter's assertions respecting its Objection and Privilege Log stating that it appropriately identified documents which it withheld or redacted as privileged or containing privileged information according to their status as either pre-suit or post-suit materials. Westfield cites *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998), for distinguishing documents included in its Objection and Privilege Log as attorney/client privileged or protected under the work product doctrine as either pre or post suit.[4] (*Id.*, pp. 5–8.) Westfield asserts that under *Gaughan*, "a party should not be permitted to broadly request documents created in anticipation or defense of litigation and then force the Court to undertake an extensive *in camera* review to establish the obvious." (*Id.*, p. 7.) Citing further decisions of the West Virginia Supreme Court of Appeals, Westfield contends that documents prepared in anticipation of litigation in an earlier case by or for a party in a subsequent related case are protected under the work product doctrine and fact work product is protected absent a showing of substantial need and the inability to obtain the information without undue hardship. (*Id.*, p. 8.) Finally, Westfield claims respecting Interrogatory Nos. 5 and 8 that because Westfield denied Carpenter's claims of coverage under its policies of insurance with Carpenter and its relationship with Carpenter became adversarial then, "Carpenter is not entitled to communications made in anticipation of litigation or descriptions of Westfield's post-suit activities." (*Id.*, p. 9.) In responding to Interrogatory No. 6[5] inquiring respecting its financial circumstances from 2009–2013, Westfield states that it objected and provided two of its most recent financial statements. Assuming that Carpenter is seeking information respecting its financial circumstances based upon its claim for punitive damages, Westfield asserts essentially that its financial circumstances prior to the time when it became aware of Carpenter's claims (July, 2011) and denied them are not relevant. (*Id.*, p. 9.) Responding to Carpenter's Interrogatory Nos. 10 and 17[6], Westfield states that it objected to disclosing the

cerning the request presented by Carpenter for defense and indemnification, and the dates thereof.

8. For each individual identified in response to Interrogatory No. 7 above, describe with specificity the activities undertaken by each individual in regard to the handling of any subject claims; indicate the dates upon which each activity was performed; describe in detail the documents which exist to evidence the fact that such activities were performed by the individual identified and, if such documents do exist, describe those documents in detail by identifying the author or the document, to whom the document was sent, the date of the document and a description of the documents or their contents. Answer: The activities of the identified individuals are set forth in the work product notes, attached as Exhibit A, at Bates 979–998.

4. As this Court recognized in *Mordesovitch v. Westfield Ins. Co.*, 235 F.Supp.2d 512, 519 (S.D.W.Va.2002)(Magistrate Judge Stanley), the West Virginia Supreme Court of Appeals stated in *Gaughan* that its decision did not apply in first party bad faith actions. *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. at 370, 508 S.E.2d at 87 ("The principles that are discussed in this opinion with respect to the attorney-client privilege and the work product rule apply exclusively to third-party bad faith settlement actions against insurers.") and fn. 17. By its Counterclaim, Carpenter, as Westfield's insured, alleges Westfield's

breach of contract, implied covenant of good faith and fair dealing and fiduciary duty, bad faith and entitlement to punitive damages. Carpenter's Counterclaim is therefore a first party bad faith action, and *Gaughan* is inapplicable.

5. Carpenter's Interrogatory No. 6 and Westfield's Answer are as follows:

6. State the amount of your net worth, gross income, and your net income or loss for your fiscal years 2009–2013.
Answer: Objection. Defendant is not entitled to financial information concerning the Plaintiff until Defendant has established a prima facie case of punitive damages. Moreover, the request for net worth, gross income or net income or loss for fiscal years 2009–2013 is overly broad. Without waiving said objection, see the two most recent financial statements of Westfield Insurance Company, which provide the requested financial information.

6. Carpenter's Interrogatory Nos. 10 and 17 and Westfield's Answers are as follows:

10. Identify every written communication sent to Plaintiff Westfield Insurance Company within the last five (5) years, related to West Virginia claims, occurrences and/or claims handling which primarily expressed a grievance related to Westfield's claims handling. In lieu of this identification, Plaintiff Westfield Insurance

requested information respecting other claims and administrative actions against Westfield absent the entry of a Protective Order because it contains personal and private information about people not parties to this matter. Westfield states that it did not refuse to disclose the information, a "complaint register" and a list of complaints filed against Westfield, altogether. (*Id.*, p 10.) Westfield then discusses its Responses to Carpenter's Requests for Production of Documents. Respecting Request Nos. 3 and 11 [7], Westfield asserts that Carpenter has taken an improper " 'shotgun' approach" to discovery of documents in its claim files and about its coverage decisions and Carpenter's "requests are so broadly worded as to even encompass production of [Westfield's attorneys'] communications with Westfield regarding the coverage issues and Westfield's litigation strategy in this action." (*Id.*, p. 11.) Westfield further indicates that it properly redacted documents prepared by Ms. McConkey as the work product of its agent in consideration of litigation and opinions of a consulting expert who Westfield had not identified as an expert who would testify at trial in the underlying State Court civil matter. (*Id.*, pp. 11–12.) Westfield then addresses Carpenter's claims respecting its identification of certain documents as post-suit documents in its Objection and Privilege Log urging that it responded properly in view of Carpenter's broad general requests based upon *Gaughan.* (*Id.*, pp. 12–13.) Respecting Request Nos. 4 and 9 [8] requesting

---

Company may attach a copy of the complete record of all the "Complaints," which it has received, as required to be maintained pursuant to *W. Va.Code* 33–11–4(10), so long as said records identify all of the written communications sent to Plaintiff Westfield Insurance Company within the last five (5) years which primarily express a grievance related to Westfield's claims handling.

Answer: Objection. The information sought in this request is irrelevant to Defendant's claims for breach of contract. Plaintiff further objects to this request as it seeks materials which are irrelevant and not calculated to lead to the discovery of relevant or admissible evidence. The information is temporally over-broad in that the request seeks information regarding incidents which occurred more than one year prior to the filing of Plaintiff's Complaint. Such incidents are not actionable or relevant under the applicable statute of limitations. Finally, this Request seeks confidential information regarding individuals who are not parties to this action. Such information can only be produced subject to an appropriate Protective Order.

17. Identify every claim which has been the subject of a third-party administrative Complaint against Plaintiff Westfield within the last three (3) years in the State of West Virginia, wherein a finding of merit has been issued as to any claim that Westfield violated the Unfair Trade Practices Act and/or the West Virginia Insurance Regulations. For each claim, provide the Claim Number, the date of the third-party administrative Complaint, the date of the letter indicating a finding of merit, and indicate the specific provisions of the West Virginia Unfair Trade Practices Act and West Virginia Insurance Regulations addressed by the merit letter.

Answer: Objection, this request seeks information which is irrelevant to the matters at issue, and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Further, the request is overly broad and burdensome, as the same would require Westfield to review each claim file over a three year period to identify such Complaints and merit letters. Without waiving said objections, see Westfield's complaint register and list of complaints, which will be produced upon entry of an appropriate Protective Order.

7. Carpenter's Request Nos. 3 and 11 and Westfield's Responses are as follows:

3. Produce a copy of the entire claim files of Plaintiff Westfield related to any claims of BOE for the Lewisburg Elementary School Project against Carpenter as well as Carpenter's request for coverage and a defense in connection with any such claims. This request specifically seeks the claims files of Plaintiff in connection with the Defendant's request for defense and indemnification in connection with any subject claims by BOE, and all coverage or other split files, regardless of who maintained them.

Response: Objection. This request seeks information which is protected by the attorney client and work product privilege. Without waiving said objection, see Exhibit A, the Westfield claim file, and the accompanying Privilege Log.

11. Provide copies of all documents which in any way reflect Plaintiff Westfield's consideration of whether or not Westfield Insurance, Commercial Insurance Coverage, Policy No. TRA 4593575, provides coverage for any claims of BOE against Carpenter.

Response: Objection. This request seeks information protected by the attorney client and work product privilege. Without waiving said objection, see the claim file attached hereto as Exhibit A, the Westfield policy with Carpenter (part of Exhibit A), and the Board of Education's Petition, filed in the Circuit Court of Greenbrier County (part of Exhibit A).

8. Carpenter's Request Nos. 4 and 9 are as follows:

claims manuals, training materials and information indicating Westfield's policies in handling commercial general liability claims, Westfield states citing Federal Rule of Civil Procedure 26(c)(1)(G) that it "did not refuse to produce the requested materials. Instead, Westfield asserted that the materials were proprietary and agreed to produce upon entry of a protective order to ensure their confidentiality." (*Id.*, pp. 13–14.) Respecting Request Nos. 8 and 12 [9] requesting documents evidencing complaints in other cases about Westfield's claims handling practices, Westfield states that it indicated "that it would produce both the 'complaint register' ... and a list of complaints filed against Westfield if Carpenter would simply agree to the entry of an appropriate protective order." (*Id.*, p. 14.) Respecting Request Nos. 14 through 21 for denial of coverage and reservation of rights letter on the basis of specified exclusions and formal allegations [10],

> 4. Provide copies of all claims manuals, memoranda, policy statements, interoffice or interdepartmental correspondence, letters or other writings or documents or other tangible items which reflect the policies and procedures of Plaintiff Westfield related to the handling of commercial general liability claims, including the investigation, adjustment, settlement and/or compromise of such claims, which materials have been utilized by the Plaintiff at any time from the date of the Defendant Carpenter's claims for insurance coverage to the present. Plaintiff Westfield may limit its response to materials used by or available to its employees or agents dealing with policies issued in West Virginia, or claims arising from accidents/occurrences in West Virginia.
>
> 9. Produce copies of the training and/or educational materials relating to the handling of commercial liability claims which are supplied to or made available to employees of the Plaintiff Westfield dealing with policies issued in West Virginia, or claims arising from accidents/occurrences in West Virginia from 2009 to the present. This request is expressly seeking production of materials provided by the Plaintiff to its employees which are designed to train or educate them regarding the handling, investigation, negotiation and/or settlement of such claims as made by the Plaintiff in this instance, and such claims made or asserted against Westfield's first party claimant and insured, Carpenter.
>
> Westfield's Response to each was the same as follows:
>
> Response: Objection. This request seeks information which is confidential and proprietary information of Westfield which, if disclosed, could impact the ability of Westfield to be competitive in its industry. Furthermore, the request is temporally and geographically overly broad. Upon entry of an appropriate Protective Order, Westfield will produce the indexes of relevant claim manuals as well as chapters which are believed to be relevant to commercial general liability claims for the time period that this claim was pending.

9. Carpenter's Request Nos. 8 and 12 are as follows:

> 8. Produce a copy of the Complaint register/log or file of complaints against Plaintiff Westfield required to be kept pursuant to *W. Va.Code* § 33–2–9 and any such information or parts thereof regarding complaints prior to said time period contemplated by said *W. Va.Code* § 33–2–9. In the event Plaintiff Westfield does not maintain a complete list of all written communications primarily expressing a grievance, as required by *W. Va.Code* § 33–11–4(10), produce copies of all such written communications dated, mailed to or received by Westfield within the last five years.
>
> Response: See Westfield's response to Interrogatory No. 10. Without waiving the objection set forth therein, Westfield will provide a copy of its complaint register upon entry of an appropriate Protective Order.
>
> 12. Produce copies of any merit letter identified in response to Interrogatory No. 17.
>
> Response: See Westfield's response to Interrogatory No. 17. Without waiving the objection set forth therein, Westfield will provide a copy of its complaint register upon entry of an appropriate Protective Order.

10. Carpenter's Request Nos. 14 through 21 request that Westfield produce all denial of coverage or reservation of rights letters issued by Westfield to West Virginia insureds in the last five years on the basis of (14) the "Damage to Your Product" exclusion; (15) the "Damage to Property" exclusion; (16) the "Damage to Your Work" exclusion; (17) the "Damage to Impaired Property or Property Not Physically Injured" exclusion; (18) the "Recall of Products, Work, Or Impaired Property" exclusion; (19) the contention that the allegations in the Complaint against the West Virginia insured did not constitute an "occurrence as defined in the applicable Westfield policies; (20) an exclusion for "Contractual Liability"; (21) a determination that any claims set forth in the Complaint against the Westfield insured were essentially contractual in nature and did not fall within the scope of a commercial general liability policy. Westfield responded to each of these Requests as follows:

> Objection. This request seeks information which is irrelevant and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Furthermore, this request is unduly burdensome in that it seeks all denial of coverage letters or reservation of rights letters issued by Westfield to West Virginia insureds over a five (5) year period. Westfield does not maintain an

Westfield asserts, as it did in responding, that the requested documents are irrelevant and responding "would require a manual search of thousands of claims files...." (*Id.*, p. 50.) Westfield states that "Carpenter has not identified any reason why it believes denial letters from other cases involving unrelated claims could be relevant." (*Id.*, p. 16.) Westfield further states that it is willing to produce information about its claims handling policies and practices upon the entry of an appropriate protective order. (*Id.*, p. 15.) Finally, Westfield addresses Carpenter's alternative request that the District Court impose sanctions for Westfield's alleged discovery abuses by striking its responsive pleadings and prohibiting its introduction of evidence in their support stating that "Westfield has legitimate and valid objections to Carpenter's discovery requests which are supported by existing law. There are no grounds for an award of sanctions...." (*Id.*, p. 17.)

On November 5, 2013, Carpenter filed its Reply to Westfield's Response. (Document No. 62.) Carpenter first reiterates that Westfield improperly withheld/redacted documents prepared by Ms. McConkey as protected under the work product doctrine or attorney-client privileged stating that Ms. McConkey is Westfield's claims adjuster and not an attorney and "thus even if the documents authored and created by Ms. McConkey were produced in 'anticipation of litigation,' any 'mental impressions' or 'work product' of Ms. McConkey would clearly be discoverable, as Carpenter's need to obtain such information from its insurer, Westfield, as to 'coverage' is substantial." (*Id.*, p. 2.) Carpenter asserts that "Westfield has not met its burden of showing how the documents and information prepared by Ms. McConkey in 2011 are somehow 'work product' protected from discovery." (*Id.*, p. 3.) Carpenter further complains that Westfield has not stated who wrote certain Bates numbered documents identified in its Objection and Privilege Log as dated between February 21 and July 11, 2013, around the time when Westfield initiated this action. (*Id.*, p.

4.) Carpenter contends, contrary to Westfield's assertions, that its discovery requests are not broad and general but specific and focused. (*Id.*, pp. 4–5.) Carpenter states that it "has established 'substantial need', and 'undue hardship' with no showing by Westfield as to how Ms. McConkey's writings in 2011 meet, or satisfy the 'anticipation of litigation' standard." (*Id.*, p. 5.) Carpenter claims generally that Westfield has not identified who prepared documents or the purpose for preparing them. (*Id.*, pp. 6–8.) Carpenter asserts that Westfield has failed to provide justification for withholding the information which Carpenter has requested in discovery and the Court must require Carpenter to respond and produce it or alternatively sanction Westfield as Carpenter has requested. (*Id.*, p. 8.)

By Order filed on May 2, 2014, the undersigned required Westfield's counsel to produce Bates page numbers 987–1006 identified in its Objection and Privilege Log as "work product notes" containing mental impressions and communications with counsel and an expert witness for the Court's *in camera* examination. (Document No. 222.)

Seeing that the parties have filed numerous discovery Motions in addition to Carpenter's Motion to Compel under consideration and that issues raised in Carpenter's Motion to Compel were resonating through the Motions, the Court held a hearing on June 27, 2014, to discuss the issues and establish the way for proceeding with discovery. During this hearing, the Court learned that Westfield disclosed Bates page numbers 987 and 988, Ms. McConkey's "work product note 44" which it had withheld as privileged, about two weeks earlier when it made its Rule 26(a)(2) expert witness disclosures and identified Mr. Roy Sexton as an expert witness.

## DISCUSSION

The Court will first consider whether Carpenter complied with Rule 37(a)(1)'s notice and certification requirement, whether Westfield should be compelled to respond further

---

electronic database of information by which claims are categorized by denial of coverage or reservation of rights letters for [the requested documents]. Identifying such letters would require a manual review of thousands of claim files.

to Carpenter's First Set of Interrogatories and Requests for Production of Documents and whether Westfield's Objection and Privilege Log is insufficient as Carpenter claims. The Court will then consider whether Westfield has properly designated the "work product notes" as "protected by the attorney-client privilege and/or the work product doctrine" in its Objection and Privilege Log.

### A. *Rule 37(a)(1) Notice and Certification Requirement.*

■ Federal Rule of Civil Procedure 37(a)(1) provides that a motion to compel discovery must contain a certification that the moving party has attempted in good faith to confer with the party who has failed to make discovery as follows:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Local Rule of Civil Procedure 37.1(b) provides as follows:

> (b) Duty to Confer:
> Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each party shall make a good faith effort to confer in person or by telephone to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange the meeting.

Carpenter has clearly failed to comply with Rule 37(a)(1) and this Court's Local Rule 37.1(b). First, Carpenter's Motion to Compel (Document No. 52.) itself as filed on October 15, 2013, includes no certification as Rule 37(a)(1) requires. Rather, Carpenter attaches to its Motion a copy of its attorney's two-page letter-form Rule 37 Notice and Certification sent "via email only" to Westfield's attorney on October 14, 2013. (Document No. 52–3.) *See HSBC Bank USA, Nat'l Ass'n v. Resh,* 2014 WL 317820 at * (S.D.W.Va.)(Chief Judge Chambers)("[A] letter on its own does not satisfy the meet and confer requirement.") Second, if Carpenter's attorney's letter-form Rule 37 Notice and Certification can be deemed in compliance with Rule 37(a)(1), it contains no request to confer in person or by telephone about Westfield's responses to Carpenter's discovery requests. Rather, Carpenter's Rule 37 Notice and Certification contains Carpenter's attorney's argumentative assertions that Westfield has inappropriately identified as privileged and withheld Ms. McConkey's October 24, 2011, writing and failed to identify who created documents dated from February 21 through July 11, 2013 (bates page numbers 992–1006). For example, Carpenter's attorney wrote that Westfield "has abusively interfered with Carpenter's legitimate discovery efforts to thwart the discovery process, and to try to produce an improper tactical advantage." Finally, Carpenter's attorney's filing of Carpenter's Motion to Compel within one day after notifying Westfield's attorney of his intention to do so effectively made conferring meaningfully about Westfield's responses impossible. Carpenter's attorney clearly did not make a good faith effort to confer before filing Carpenter's Motion to Compel. *See Miller v. Pruneda,* 236 F.R.D. 277, 282 (N.D.W.Va.2004)("Seven days is a reasonable amount of time to wait for a response to an attempt to confer.")

While some Courts hold that it is appropriate to deny a motion to compel absent compliance with Rule 37(a)(1), *Patrick v. Teays Valley Trustees, LLC,* 297 F.R.D. 248, 266 (N.D.W.Va.2013)("The failure to follow the requirement to confer, or attempt to confer, is grounds for the court to deny the motion to compel."), the sanction in this District is denial of expenses including attorneys fees. *Frontier–Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.,* 246 F.R.D. 522, 526 (S.D.W.Va.2007)("While it is mandatory for parties to meet and confer in person or by telephone prior to filing a motion to compel, the Federal Rules of Civil Procedure and Local Rules do not provide that failure to meet and confer automatically results in denial of the motion. Rather, the sanction for failing to meet and confer is the denial of a request for expenses incurred in making the motion, including attorneys fees."); *see also*

Rule 37(a)(5)(A)(i). Accordingly, the Court will consider the substantive issues which Carpenter's Motion to Compel and Westfield's Response present and will deny Carpenter's request for expenses including attorneys fees in moving to compel if the Court finds that its Motion should be granted to any extent.

### B. Westfield's Responses to Carpenter's Interrogatories and Production Requests.

■ Carpenter refers to Westfield's Responses to Carpenter's First Set of Interrogatories and Requests for Production of Documents as "inadequate" in its Summary List of Westfield's Responses attached to its "Rule 37 Notice and Certification". Carpenter does not mention Westfield's Responses in the body of its "Rule 37 Notice and Certification". Rather, Carpenter challenges Westfield's designation of Bates numbered documents 987–988 and 992–1006, the "work product notes", as privileged in its Objection and Privilege Log. Likewise, in its Motion to Compel, Carpenter only mentions in passing Westfield's Responses to Its Interrogatories and Document Requests. (Document No. 52, p. 2.) Otherwise, Carpenter vigorously disputes Westfield's withholding of the Bates numbered documents as privileged. In responding to Carpenter's Motion to Compel, Westfield has explained its Responses to Carpenter's Interrogatories and Document Requests. In replying to Westfield's Response (Document No. 62.), Carpenter again only mentions Westfield's Responses to its Interrogatories and Document Requests on the first page concentrating instead on Westfield's withholding of the above referenced Bates numbered documents, especially Ms. McConkey's writing (Bates number 987–988).

"The grounds for objecting to an interrogatory must be made with specificity." Federal Rule of Civil Procedure 33(b)(4). In responding to a request for production of documents, a party may "state an objection, including the reasons." Rule 34(b)(2)(B). Westfield objects to responding to Carpenter's Interrogatories stating its reasons for doing so specifically. Though stating objections to many of Carpenter's Interrogatories and Production Requests, Westfield refers to "work product notes" of its representatives which it disclosed as is appropriate under Rule 33(d) and also states that it will provide responses "upon entry of an appropriate Protective Order." Most of Westfield's objections are therefore not outright refusals to answer or respond. The undersigned finds Westfield's responses to Carpenter's Interrogatories and Production Requests to be in compliance with the Rules and will deny Carpenter's Motion to Compel Westfield to respond further.

### C. Adequacy of Westfield's Objection and Privilege Log.

■ Carpenter insinuates that Westfield's Privilege Log is inadequate in not stating who authored "work product notes" identified in Westfield's Objection and Privilege Log as Bates Pages 992–998 (post suit communications of Westfield's representatives) and 999–1006 (mental impressions of Westfield's representatives and communications with counsel).[11]

■ Rule 26(b)(5)(A) provides as follows respecting the withholding of information considered privileged:

> *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

A privilege log must contain "specific facts which, taken as true, establish the elements of the privilege for each document for which

---

**11.** Westfield's Objection and Privilege Log also contains references to a number of insurance forms and policy declarations by Bates page number indicating that they were "redacted to remove confidential and proprietary ... information." Carpenter does not challenge Westfield's withholding of information contained in theses documents.

privilege is claimed. A privilege log meets this standard, even if not detailed, if it identified the nature of each document, the date of its transmission or creation, the author and recipients, the subject and the privilege asserted." *Clark v. Unum Life Ins. Co. of America,* 799 F.Supp.2d 527, 536 (D.Md. 2011), *quoting N.L.R.B. v. Interbake Foods, LLC,* 637 F.3d 492, 502 (4th Cir.2011) (Footnote omitted.) A summary of the specific facts underlying the assertion of the privilege respecting each of the documents or category of documents withheld and an adequate explanation of why each document or category of documents withheld as privileged are required. The Rule 26 Advisory Committee Notes, 1993 Amendments, state that "[t]o withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." *See also Herbalife Intern., Inc. v. St. Paul Fire and Marine Ins. Co.,* 2006 WL 2715164 (N.D.W.Va.)("Failure to timely produce or production of an inadequate privilege log may constitute a waiver of any asserted privileges. However, some courts have held that the waiver of a privilege extends only to those cases in which the offending party committed unjustified delay, inexcusable conduct or bad faith in responding to discovery." (Citations omitted.)) Sanctions under Rule 37(b)(2) include the requirement that "the court ... order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Rule 37(b)(2)(C).

Having examined the "work product notes" *in camera,* the undersigned finds Westfield's description of them in its Objection and Privilege Log inadequate. Westfield's Objection and Privilege Log states as follows respecting "work product notes" 44 and 73 through 148 designated Bates Pages 987–988 and 992–1006 (Document No. 52–2., pp. 30–31.):

987–988 Work product note 44 dated October 24, 2011 by Judy McConkey relating to communications with consulting expert and mental impressions concerning claim. Ob-

jection. **This document is protected by the attorney-client privilege and/or the work product doctrine, or otherwise privileged and confidential and is not being produced at this time.**

992–998 Work product notes 73–107 beginning February 21, 2013 through April 11, 2013 which reflect post suit communications and are presumptively privileged. **Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or otherwise privileged and confidential and is not being produced at this time.**

999–1006 Work product notes 107–148 dated April 11, 2013 to July 11, 2013 reflecting the mental impressions of Westfield representatives and communications with counsel for Westfield. **Objection. This document is protected by the attorney-client privilege and/or the work product doctrine, or otherwise privileged and confidential and is not being produced at this time.**

Respecting Bates page numbers 992–1006, Westfield did not identify the "work product notes" separately or categorically as it could have stating the specific dates when they were created and who wrote them. Respecting all three of the descriptions, Westfield did not identify specifically what privilege it is asserting with respect to each "work product note" or category thereof and explain why each "work product note" or category thereof is privileged. Westfield's assertion of "the attorney-client privilege and/or the work product doctrine" is too general and will not suffice. As will be discussed below, all of the "work product notes" were written by employees of Westfield. Some indicate and summarize communications with Westfield's attorney. They are all basically eligible for consideration under the work product doctrine. They do not become eligible for consideration under the attorney-client privilege just because they indicate and summarize communications with Westfield's attor-

ney. In withholding the "work product notes", Westfield should have cited the work product doctrine only and explained how it applied.

■ Finding Westfield's Objection and Privilege Log inadequate, the question becomes what, if any, sanctions are appropriate. The circumstances do not warrant imposition of the extreme sanction of waiver as Westfield did not commit unjustified delay, inexcusable conduct or bad faith in responding to discovery. Nor is striking pleadings or excluding evidence appropriate as Carpenter requests. Requiring Westfield to pay Carpenter's expenses and attorney's fees would be an appropriate sanction, but the Court cannot overlook Carpenter's attorney's failure to provide notice before filing Carpenter's Motion to Compel. Had Carpenter's attorney done so and the parties conferred focusing upon Westfield's Objection and Privilege Log, the matters now before the Court might have been resolved. An award of Carpenter's expenses in filing its Motion to Compel for Westfield's inadequate Objection and Privilege Log would, however, effectively supersede and extinguish the sanction for Carpenter's failure to give adequate notice before filing its Motion to Compel under Rule 37(a)(5)(A)(i), denial of expenses including attorneys fees. The Court finds under the circumstances that the Rule's requirement that counsel attempt to work through discovery issues before asking for the Court's assistance is paramount and deserves promoting and an award of Carpenter's expenses for Westfield's inadequate Objection and Privilege Log would be unjust. The Court will therefore order no award of expenses and will deny the other sanctions which Carpenter has requested.

### D. Are the "Work Product Notes" Designated in Westfield's Objection and Privilege Log Work Product or Attorney–Client Privileged?

Federal Rule of Civil Procedure 26(b)(1) provides as follows respecting the allowable scope of discovery in a civil proceeding:

*Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

The first consideration in responding to written discovery requests is therefore whether information and documents are "relevant to any party's claim or defense." Having determined that information and documents are relevant or contain relevant information, the next consideration is whether the information and documents are nonprivileged or privileged and protected from discovery.

■ Federal law applies in consideration of work product issues in Federal Courts. *Nicholas v. Bituminous Cas. Corp.,* 235 F.R.D. 325, 329 at fn. 2 (N.D.W.Va.2006)("In a diversity case federal courts apply federal law to resolve work-product privilege claims and state law to resolve attorney-client privilege claims.") Rule 26(b)(3)(A) provides as follows respecting work product materials:

(A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

■ The work product doctrine as incorporated in the Federal Rules now at Rule

26(b)(3)(A) protects from discovery documents which are prepared in anticipation of litigation. The 1970 amendments of the Rule made it clear that "mental impressions and subjective evaluations of investigators and claim-agents" in anticipation of litigation are protected as work product. *See* Advisory Committee Notes, 1970 Amendments to Rule 26(b)(3). The burden of proving the applicability of the work product doctrine rests with the party asserting it. Once proven, the burden shifts to the contesting party to prove substantial need for and inability to obtain the substantial equivalent of the materials by any other means. See the undersigned's writing in *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 584–585 (S.D.W.Va.2002).

■ "The application of the work product doctrine is particularly difficult in the context of insurance claims." *Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 536, 541–542 (N.D.W.Va.2000)("[T]he document must be prepared under the 'substantial and imminent' or 'fairly foreseeable' threat of litigation."); *Video Warehouse of Huntington, Inc. v. Boston Old Colony Insurance Company*, 160 F.R.D. 83, 85 (S.D.W.Va.1994); *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies*, 123 F.R.D. 198, 202 (M.D.N.C.1988)("Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims file containing such documents usually cannot be entitled to work product protection. Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation. [footnote and citation omitted] This is not to say that the threat of litigation may never arise at an earlier time. However, if the insurer argues that it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate."); *Bowling v. Appalachian Elec. Supply, Inc.*, 2014 WL 1404572 at *3 (S.D.W.Va.)(Magistrate Judge Eifert). The Fourth Circuit Court of Appeals stated as follows in *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983–84 (4th Cir.1992):

> [T]he jurisprudence of Rule 26(b)(3) ... divides work product into two parts, one of which is 'absolutely' immune from discovery and the other only qualifiedly immune. * * * [T]he pure work product of an attorney insofar as it involves 'mental impressions, conclusions, opinions, or legal theories ... concerning the litigation' is immune to the same extent as an attorney-client communication.... This is so whether the material was actually prepared by the attorney or by another 'representative' of the party.... All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.' Thus, in resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need.

The Court further stated when a document is prepared in anticipation as follows:

> The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. * * * Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.

*Id.*, at 984. The Fourth Circuit therefore stated the framework for analyzing work product issues as follows:

> In short, to resolve whether Rule 26(b)(3) grants immunity from discovery, the district court must determine, from an examination of the documents or their circumstances, whether they were prepared in anticipation of litigation or for trial. If so and if the documents embody opinions and

theories about the litigation, discovery is refused without further inquiry. If opinions and theories are only part of a document otherwise discoverable, the court may require production of a redacted copy. With regard to other documents falling within the scope of Rule 26(b)(3), the court must determine whether the requesting party has a substantial need for them, taking into account their relevance and importance and the availability of the facts from other sources.

*Id.*, at 985. It is clear therefore that Courts must proceed on a "case-by-case" basis in consideration of facts indicating the circumstances under which the requested documents were prepared or created and are sought in litigation and finally, upon *in camera* examination of the documents themselves, in consideration of the purpose and intent of the representatives in preparing or creating them. District Judge Broadwater listed some of the facts deserving attention in the analysis as follows in *Kidwiler, supra,* at 542 (footnotes omitted):

> There is no hard and fast rule to determine the point in time when a document is created under the ordinary course of business, and therefore not protected by the work product doctrine, or under the anticipation of litigation, and therefore, protected by the work product doctrine. Therefore, the Court adopts a 'case-by-case' approach to this issue, and considers the following factors relevant in this analysis: 'the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case' and, in addition, the involvement of counsel. Furthermore, the Court considers persuasive, in this analysis, the time when the document is created.

Generally, it is reasonable to assume that investigative interviews conducted and reports prepared by an insurance claims adjuster prior to the insurer's decision to deny coverage are conducted and prepared in the ordinary course of the insurer's business and must be disclosed in first-party coverage litigation. Conversely, it is reasonable to assume that documents prepared by insurance company representatives after the company's decision to deny coverage are prepared in anticipation of litigation and therefore protected against disclosure in first-party coverage litigation under the work product doctrine. *Schwarz & Schwarz of Virginia, L.L.C. v. Certain Underwriters at Lloyd's London Who Subscribed to Policy No. NC959,* 2009 WL 1043929 at *3 (W.D.Va.)("Although the date an insurance company denies coverage does not constitute a 'bright line,' only after which work product protection can apply, this does not mean that the denial of coverage date cannot constitute the 'pivotal point' when 'an insurance company shifts its activity from the ordinary course of business to anticipation of litigation.'" *quoting State Farm Fire and Cas. Co. v. Perrigan,* 102 F.R.D. 235, 239 (W.D.Va. 1984)). "Even after a claim is denied, reports of investigations filed thereafter which contain prior investigations or evaluations, or are merely a continuation of the initial investigation, may not be labeled as work product." *Pete Rinaldi's Fast Foods, Inc.,* 123 F.R.D. at 202, fn. 4. It is further clear that when the work product protection applies in underlying litigation, it also applies in all subsequent litigation. *Mordesovitch v. Westfield Ins. Co.,* 244 F.Supp.2d 636, 645–646 (S.D.W.Va.2003).

Rule 26(b)(3)(A) makes discovery of documents prepared in anticipation of litigation subject as well to Rule 26(b)(4) pertaining to the work product of experts. Rule 26(b)(4)(D) provides as follows respecting discovery of information developed by experts who have been retained in anticipation of litigation but not expected to be called as a witness at trial:

> *(D) Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or

(ii) on showing exceptional circumstances under which it is impracticablefor the party to obtain facts or opinions on the same subject by other means.

The Court notes the parallel construction and similar language of Rule 26(b)(3)(A) and Rule 26(b)(4)(D). Rule 26(b)(4)(D) basically applies the work product rule to non-testifying/consulting experts retained in anticipation of litigation. The Rule 26 Advisory Commentary Notes, 1970 Amendment, state that "subdivision [ (b)(4) ] does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." The opinions and information obtained by experts retained as consultants by insurance companies in the ordinary course of investigating potential liability claims are not protected. *See Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 661 (S.D.Ind.1991)("[A]n investigative or evaluative report shown to have been produced for litigation purposes when the prospect of litigation is determined to be remote is not work product, and a report produced at a time when litigation was justifiably anticipated is not work product if the report was produced in the ordinary course of the party's business.")

■ "[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 at fn. 11, 95 S.Ct. 2160, 2170 at fn. 11, 45 L.Ed.2d 141 (1975), *citing Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). "In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential." *Montpelier U.S. Insurance Company v. Bloom,* 233 W.Va. 258, 757 S.E.2d 788, 794 (2014)(A first party bad faith action in which the West Virginia Supreme Court of Appeals held that the insurer's national coverage counsel's coverage opinion letters to the insurer were attorney-client privileged.).

### 1. *Ms. McConkey's October 24, 2011, "Work Product Note 44".*

■ In the instant matter, it is alleged that Carpenter was covered under a Commercial General Liability policy of insurance including Commercial Umbrella Coverage with Westfield between December 1, 2010, and December 1, 2011. During that period of time, Carpenter performed site preparation work under contract with the Greenbrier County Board of Education for the construction of Lewisburg Elementary School. Carpenter's site preparation work allegedly did not conform with the specifications for the work. It appears that other contractors on the site gave Carpenter notice that its work was not in conformity with the contract specifications. (Document No. 1, p. 3, ¶¶ 11–13.) In February, 2013, the Board initiated a lawsuit in the Circuit Court of Greenbrier County against Carpenter and the other contractors asserting Carpenter's breach of contract. (Document No. 108–2, The Board's Greenbrier County Petition for Declaratory Relief and Award(s) and Judgment for Breach of Contract.) The record indicates that Westfield denied coverage under its insurance policies and refused to provide Carpenter a defense in the Board's lawsuit by letter dated February 22, 2013. (Document No. 108–8, a copy of Westfield's February 22, 2013, letter denying coverage in view of the allegations contained in the Board's Petition.). The undersigned assumes from the record that Westfield became aware of the circumstances amounting to a potential claim upon coverage sometime during the term of its policies, i.e., prior to December 1, 2011, as it appears from Westfield's Objection and Privilege Log indicating that in her October 24, 2011, "work product note 44" Ms. McConkey related "communications with consulting expert and mental impressions concerning claim." Westfield finally denied coverage and refused to provide Carpenter a defense by letter dated February 22, 2013, just after Westfield learned that the Board initiated its suit against Carpenter. It appears that the Board's Greenbrier County

action settled in December, 2013. (Document No. 108–12, transcript of the settlement agreement.) Clearly, during the period of time roughly from October 2011 to February 2013, Westfield conducted an investigation respecting Carpenter's alleged non-conforming work in order to determine whether or not coverage existed under its policies and it should provide Carpenter a defense against the Board and other contractors.[12] Westfield conducted its investigation anticipating a claim on coverage by the Board and the other contractors over Carpenter's liability, not with Carpenter over insurance coverage. Only after February 22, 2013, when Westfield finally denied coverage and refused to provide Carpenter a defense to the allegations contained in the Board's Greenbrier County action, can Westfield be reasonably regarded as anticipating litigation with Carpenter. Generally, therefore, "work product notes" dated after February 22, 2013, containing or indicating the mental impressions and subjective evaluations of Westfield's agents respecting matters related to the anticipated litigation with Carpenter should be regarded properly withheld as work product. The Court will consider the "work product notes" which Westfield withheld as privileged applying this standard.

Respecting Ms. McConkey's October 24, 2011, note 44 which Westfield identifies in its Objection and Privilege Log as "relating to communications with consulting expert and mental impressions concerning claim", Westfield claims that it properly redacted and withheld documents prepared by Ms. McConkey as the work product of its agent in consideration of litigation and opinions of a consulting expert who Westfield had not identified as an expert who would testify at trial in the underlying State Court civil matter. Carpenter contends that Westfield has failed to meet its burden of proving that note 44 is protected under the work product doctrine and Westfield improperly withheld note 44 when neither the attorney/client privilege nor the work product doctrine protect it from discovery. The undersigned finds that Ms.

McConkey, identified as a Claim Representative in the notes, prepared note 44 in her capacity as Westfield's Claim Representative. She did so as Westfield's employee or agent and, if she did so in anticipation of litigation, note 44 would be protected from discovery under Rule 26(b)(3)(C). She did not, however, do so in anticipation of litigation. Rather, she did so in the ordinary course of her duties as Westfield's Claim Representative and Westfield's business in October, 2011, as Westfield was beginning to investigate the circumstances pertaining to Carpenter's work performance to determine if there was any covered liability and well over a year before the Board filed its Complaint in the Circuit Court of Greenbrier County in February, 2013. Second, considering the nature of Ms. McConkey's note 44, the note appears to contain Ms. McConkey's summary of a discussion which she had with Mr. Roy Sexton, a consulting expert who visited the site. It includes, among other things, Ms. McConkey's brief and preliminary assessment of the responsibilities of Carpenter, the Board and the general contractor for the circumstances and an estimate of the potential liability. It is therefore Ms. McConkey's writing though it might include the impressions or conclusions which the consulting expert reached and related to her. Considering note 44 under Rules 26(b)(3)(C) and 26(b)(4)(D), the undersigned finds that neither Ms. McConkey nor the consulting expert were in anticipation of litigation at the time Ms. McConkey prepared it. Rather, the driving force behind the creation of the document was the investigation of the circumstances in the ordinary course of Westfield's business to determine if there was covered liability. For these reasons, the undersigned concludes that Westfield improperly withheld note 44 as protected work product.

### 2. *February 21 through July 11, 2013, "Work Product Notes" 73 through 148.*

▮▮▮▮ Westfield withheld Bates page numbers 992–998 as attorney-client and/or

---

**12.** It appears that Westfield concluded and advised Carpenter in writing as early as March 30, 2012, that potential claims arising out of its work at the site of the construction of the Lewisburg Elementary School were not covered. (Document No. 112–6.) "Work product note" 66,

which is not among those Westfield identified in its Objection and Privilege Log, indicates that Westfield also sent Carpenter a letter denying coverage on April 24, 2012, well before the Board filed its Complaint in the Circuit Court of Greenbrier County.

work product privileged describing them in its Objection and Privilege Log as "Work product notes 73–107 beginning February 21, 2013, through April 11, 2013, which reflect post suit communications and are presumptively privileged." Notes 73, 74 and 75 are dated February 21, 2013, and written by Ms. McConkey. Note 73 is Ms. McConkey's February 21, 2013, writing indicating that she received the summons and complaint in the Board's Greenbrier County action from Carpenter and includes her summary of the allegations contained in the Board's Complaint. Note 74 contains Ms. McConkey's conclusion in view of the allegations contained in the Board's Complaint that the Board's claims were not covered under Westfield's policies of insurance and indication that she would send Carpenter another letter indicating her conclusion. Though Westfield no doubt had a heightened sense that there would be coverage litigation with Carpenter after it denied coverage in August, 2012, and that the likelihood of it became even greater when the Board filed its Complaint against Carpenter, the undersigned finds nevertheless that Westfield's reconsideration of its decision to deny Carpenter coverage upon receipt of the Board's Complaint was clearly within the ordinary course of its business. Notes 73 and 74 are therefore not work product protected, and the Court will require their disclosure. Note 75 indicates that Ms. McConkey designated copies of a performance bond and contracts to Westfield's file. Notes 76 through 78 are dated February 22, 2013, and written by Ms. Cynthia Meyer. Notes 76 and 77 indicate that Ms. McConkey caused a letter to be created stating that the Board's claims were not covered under Westfield's policies and it was sent to Carpenter. Note 78 indicates that Ms. Meyer, who evidently works in Westfield's Wheeling office, sent the file to Ms Janice Carnes in Westfield's Charleston office. Notes 79 through 83 are dated from February 25 to April 2, 2013 and written by Ms. Carnes. They indicate her work in managing Westfield's file. Notes 75 through 83 are not work product as they do not contain or reflect the impressions or conclusion of Westfield's agents, but they are insignificant and contain no information relevant to the claims or defenses of the

parties. For this reason, the Court will not require their disclosure.

Notes 84 through 92 are dated April 5, 2013, and written by Ms. McConkey. Note 84 indicates that Ms. McConkey, having received a call from Carpenter's attorney the week before in which Carpenter's attorney requested a copy of Westfield's policy and requested that Westfield provide coverage and a defense to the Board's claims, attempted to contact Westfield's attorney and contains a brief summary of a discussion which Ms. McConkey had with another Westfield employee about retaining counsel and Ms. McConkey's loss reserve evaluation. Ms. McConkey's summary of her discussion with another Westfield employee clearly reflects the considerations of Westfield's agents in anticipation of litigation and is work product protected under Rule 26(b)(3)(A). Ms. McConkey entered her loss reserve evaluation well after Westfield informed Carpenter that Carpenter's circumstances were not covered and after she received the phone call from Carpenter's attorney. Her evaluation obviously occurred in contemplation of litigation and is work product protected. *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 332–333 (N.D.W.Va.2006); *Mordesovitch v. Westfield Ins. Co.*, 244 F.Supp.2d 636, 643 (S.D.W.Va.2003). Additionally, loss reserve information generated well after an insurer is in anticipation of litigation is irrelevant in a first party insurance case. *Imperial Textiles Supplies, Inc. v. Hartford Fire Insurance Company*, 2011 WL 1743751 at *4 (D.S.C.). Likewise, note 88 contains loss reserve information and is work product protected and bears no relevancy to this proceeding. Notes 85–87 and 89–92 pertain to Westfield's claim and file management and distributing copies of documents internally and to Carpenter's and Westfield's attorneys. The Court finds that Westfield has improperly designated these notes as attorney-client and/or work product protected but these notes too contain nothing of any relevance to this proceeding, and the Court will not require their disclosure for this reason. Likewise, note 93, a Home Office System entry indicating a reinsurance company, contains nothing of any relevance. Notes 94 through

101 are dated April 8 and April 9, 2013 and written by Ms. Janice Carnes. Note 94 indicates that Ms. Carnes wrote a letter to Carpenter's attorney advising that Westfield's attorney was conducting a coverage review and that he should proceed with Carpenter's defense in the Board's action. Notes 95 through 98 and 101 are designated "DELETED" and indicate the drafting of letters and copying and mailing of documents. Notes 99 and 100 contain the same information none of which has any relevance to this proceeding. Notes 102 through 105 are dated April 9 and 10, 2013, and were written by Ms. McConkey. They indicate that she had a conversation with Westfield's attorney about conducting a coverage review and took care of other matters pertaining to his representation of Westfield. They contain nothing of any relevance to this proceeding. Notes 106 through 108 are dated April 10 through April 12, 2013, and were written by Ms. Kristen Rock. Note 106 is designated "DELETED" and indicates Ms. Rock's opening of a file. It has no relevance to this proceeding.

 Westfield withheld Bates page numbers 999–1006 as attorney-client and/or work product privileged describing them in its Objection and Privilege Log as "Work product notes 107–148 dated April 11, 1013, to July 11, 2013, reflecting the mental impressions of Westfield representatives and communications with counsel for Westfield." Note 107 indicates that Ms. Rock examined the file and had a conversation with Ms. McConkey and contains her summary of Carpenter's circumstances and the Board's Greenbrier County lawsuit and her discussion with Ms. McConkey about Carpenter's counsel's coverage demand and conclusions respecting coverage. The Court finds that, as Ms. McConkey did in notes 73 and 74, Ms. Rock wrote note 107 as she considered Westfield's denial of coverage in view of developing circumstances. She did so in the ordinary course of her work as a Westfield employee and not directly in anticipation of litigation. Note 107 is not work product protected. Note 108 is designated "DELETE" and indicates that Westfield's attorney would conduct a coverage review and Carpenter was defending against the Board's suit. Notes 109 through 111 are dated April

16, 2013, and indicate that Ms. Rock sent a copy of Carpenter's certified policy to Ms. Carnes, and Ms. Carnes sent the certified policy to Westfield's and Carpenter's attorneys. Note 112 is dated April 19, 2013, and is designated "DELETED". It is Mr. Jeff Connor's indication that a file review was or should be conducted since Westfield had retained counsel. Notes 108 through 112 are not work product but contain nothing relevant to this proceeding. The undersigned will therefore not require their disclosure. Notes 113 through 115 are dated April 30, 2013, and 116 through 119 are dated May 7, 2013 and written by Ms. McConkey. Note 113 indicates that Ms. McConkey received a phone call from Carpenter's attorney about the policy and issues. The note further indicates that Ms. McConkey spoke with Westfield's attorney about his coverage review and then called Carpenter's attorney back to inform him that he should call Westfield's attorney. Note 114 indicates that Ms. McConkey called Western Surety, the company which issued a performance bond, to learn its position and left a message. It further indicates that Ms. McConkey learned that construction of Lewisburg Elementary School was complete. Note 115 appears to be Ms. McConkey's note to file indicating that she was awaiting Westfield's counsel's coverage opinion and Western Surety's return call. Notes 113 through 115 are not work product but contain nothing relevant to this proceeding. Notes 116 and 117 indicate that Ms. McConkey received Westfield's counsel's opinion respecting coverage and his recommendations for proceeding and summarize the opinion and recommendation. Westfield properly withheld notes 116 and 117 because they contain Ms. McConkey's summary of Westfield's counsel's coverage evaluation and recommendations respecting how to proceed and therefore constitute work product prepared in anticipation of litigation. Note 118 contains Ms. McConkey's summary of information about claims of the parties and proceedings in the Board's Greenbrier County case. Note 119 is a repeat of note 115 and her further indication that she was expecting a response from Carpenter's attorney and direction respecting

how Westfield would proceed. Notes 120 and 121 are dated May 7, 2013, and written by Ms. Carnes. Note 120 indicates that a coverage denial letter was created and mailed to Carpenter's attorney. Note 121 is designated "DELETED" and indicates the same thing. Note 122 is dated May 29, 2013, and written by Ms. McConkey. Ms. McConkey summarized information respecting developments in the Board's Greenbrier County proceeding as she received it through communications with Westfield's attorney and monitoring the proceeding. Note 123 is dated May 31, 2013, and written by Ms. Rock. Ms. Rock summarized information about the opening of Lewisburg Elementary School, the claims of the parties including Carpenter and the possibility of mediation and the Board's settlement with two defendants in the Board's Greenbrier County proceeding. Ms. Rock poses three questions to Ms. McConkey; the first respecting the Board's settlement with two defendants in its Greenbrier County proceeding and the next two pertaining to its denial of coverage to Carpenter. These latter two questions start a communication between Ms. Rock and Ms. McConkey about Westfield's position after its decision to deny coverage, and the Court regards them exempt from discovery as work product. Ms. McConkey and Ms. Rock wrote notes 118, 122 and most of 123 as they were following the Board's Greenbrier County lawsuit. When insurers deny coverage, they commonly follow litigation involving their insureds in case claims or evidence develops which might require reconsideration of the coverage denial. The Court finds therefore that Ms. McConkey and Ms. Rock wrote notes 118, 122 and most of 123 in the ordinary course of their work for Westfield. These notes are not work product protected, and the Court will order that Notes 118 and 122 be disclosed and 123 be disclosed with the last two questions redacted. The Court finds that Note 124 dated June 4, 2013, is Ms. McConkey's response to Ms. Rock's May 31, 2013, questions. Her response indicates Westfield's attorney's advice and contains information respecting the filing of the instant proceeding. Because it indicates Westfield's attorney's advice, the Court regards it a communication between Westfield agents in anticipation of litigation with Carpenter and therefore work product protected. Notes 125 through 130 are dated June 4 through June 7, 2013, and written by Ms. McConkey. They indicate matters pertaining to the Board's Greenbrier County lawsuit and the filing and service of the Complaint in this action upon Carpenter. They do not contain anything which might be regarded as work product, but they also contain nothing of any relevance to this proceeding. The Court will not therefore order their disclosure. Notes 131 and 132 are dated June 10, 2013, and written by Ms. Rock. Note 131 indicates that this action was filed and Carpenter's attorney was informed of it. It also contains Ms. Rock's note directed to Ms. McConkey contemplating what Westfield might do if Carpenter agreed that coverage did not exist. Note 132 is designated "DELETED" and indicates the additional cost of the school construction project. Neither of these notes contain any information relevant to the claims of the parties. Notes 133 through 141 are dated June 11, 12 and 13, 2013, and written by Ms. McConkey. In them, Ms. McConkey responds to Ms. Rock's note in note 131 (note 133), notes the filing of this matter and anticipates Carpenter's response and a hearing in this matter (notes 134 and 135), summarizes developments in the Board's Greenbrier County lawsuit (note 136), considers the course the Board's Greenbrier County lawsuit might take in view of developments and proceedings in this matter (note 137), notes the Board's filing of a Motion to Dismiss in this matter (note 138) and the filing of a response in opposition to it (note 139), notes Carpenters' filing of its Answer and Counterclaim in this matter (note 140) and matters pertaining to coverage (note 141). Notes 133, 137 and 141 contain Ms. McConkey's thoughts in contemplation of this action and are work product. Notes 134—136 and 138—140 contain summaries of developments in the Board's Greenbrier County lawsuit and this action, information which is of little if any relevance to the claims of the parties in this matter and in any event is known or easily knowable from the record. Notes 142 and 143 are dated July 8, 2013, and written by Ms. Rock. In note 142, Ms. Rock summarizes de-

velopments in the Board's Greenbrier County lawsuit and this matter and directs Ms. McConkey respecting a coverage related matter. Note 142 is work product. Note 143 is designated "DELETED" and refers to note 140 and Carpenter's answer and counterclaim. Notes 144 and 145 which is also designated "DELETED" are dated July 9, 2013, and written by Ms. McConkey. Ms. McConkey notes dates by which she expects certain developments. They contain nothing relevant to the claims of the parties in this matter. Note 146 is dated July 10, 2013, and written by Ms. Rock. It is a note to Ms. McConkey directing the copying and sharing of the file and matters pertaining to coverage. In this latter regard, it is work product in view of this matter. Notes 147 and 148 are dated July 11, 2013, and written by Ms. McConkey. Ms. McConkey indicates that the file was copied for sharing internally, she would meet with Westfield's attorney and discussions had occurred between a Westfield employee and Westfield's attorney. Notes 147 and 148 do not contain or indicate mental impressions or subjective evaluations in contemplation of this litigation, but also do not contain any information relevant to the claims or defenses of the parties, and the Court will not require their disclosure.

Westfield identified ten of the notes properly as work product (notes 84, 88, 116, 117, 124, 133, 137, 141, 142 and 146). Westfield withheld seven notes improperly as work product when they were created in the ordinary course of Westfield's business (notes 44, 73, 74, 107, 118, 122 and 123 with its last two questions redacted). Westfield designated 61 notes improperly as work product when they actually contained no information relevant to any party's claims or defenses and should have been withheld for this reason (Notes 75–83, 85–87, 89–106, 108–112, 113–115, 118–121, 125–133, 134–136, 138–140, 143–145, 147 and 148).

It is therefore hereby **ORDERED** that Carpenter's Motion to Compel (Document No. 52.) is hereby **GRANTED IN PART and DENIED IN PART.** Carpenter's Motion to Compel is **GRANTED** to the extent that the Court has determined that Westfield withheld seven "work product notes" improperly.

Westfield shall produce a copy of "work product notes" 44, 73, 74, 107, 118, 122 and 123 with its last two questions redacted promptly upon receipt of this Memorandum Opinion and Order. Carpenter's Motion to Compel production of the remaining "work product notes" designated in Westfield's Objection and Privilege Log is **DENIED.** Carpenter's Motion to Compel further responses to its First Set of Interrogatories and Requests for Production of Documents is **DENIED.** Carpenter's further requests in the alternative to strike Westfield's pleadings, *in limine* to exclude evidence and for expenses including attorneys fees in moving to compel are **DENIED.**

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.